**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| THEO STUBBS, | ) | CASE NO. 1:25-cv-02203-RJS |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | REUBEN J. SHEPERD |
| | ) | |
| WARDEN HENRY, *et al.*, | ) | |
| | ) | ORDER |
| Defendants. | ) | |
| | ) | |

## I.      Introduction

On October 15, 2025, Plaintiff Theo Stubbs ("Stubbs"), proceeding pro se, filed a

Complaint asserting constitutional claims for deliberate indifference, retaliation, and unsafe

conditions under 42 U.S.C. § 1983 while held as a pretrial detainee in the Cuyahoga County

Correctional Center ("CCCC") against Defendant Henry, the Warden of the CCCC during the

relevant period of Plaintiff's pretrial detainment, and Defendants Harrison, Krotzer, and Jordan,

who were all Corrections Officers at the CCCC (collectively, the "Defendants"). (ECF Doc. 1,

Compl., ¶¶ 4-7; ECF Doc. 13, Ans., ¶¶ 4-7). Stubbs filed a motion to proceed *in forma pauperis*

on October 15, 2025, (ECF Doc. 2), which the Court granted on October 16, 2025. (ECF Doc. 3).

Defendants filed an answer to the Complaint on December 11, 2025. (ECF Doc. 13). On June 13,

2025, the case was referred to me for pretrial supervision, (ECF Doc. 14), and on March 16,

2026, I was assigned to the case pursuant consent of the parties. (ECF Doc. 16).

Defendants have since filed a Rule 12(c) Motion for Judgment on the Pleadings,

requesting the matter be dismissed in its entirety. (ECF Doc. 15). As explained below, the

Complaint fails to allege facts upon which relief might be granted. I therefore dismiss Stubbs'

1

claims for deliberate indifference and retaliation with prejudice, and dismiss Stubbs' claim for unsafe conditions against Defendants without prejudice.

## II.     Procedural History

Stubbs filed his Complaint on October 15, 2025, naming Defendant Henry, the Warden of the CCCC during the relevant period of Plaintiff's pretrial detainment, and Defendants Harrison, Krotzer, and Jordan, who were all Corrections Officers at the CCCC. (ECF Doc. 1, Compl., ¶¶ 4-7). In that Complaint, Stubbs asserts constitutional claims for deliberate indifference, retaliation, and unsafe conditions under 42 U.S.C. § 1983. (*Id.* ¶ 1; ECF Doc. 1-1).

On January 23, 2026, Defendants filed a Motion for Judgment on the Pleadings. (ECF Doc. 15). Stubbs filed an opposition to the Motion for Judgment on the Pleadings on February 18, 2026. (ECF Doc. 18). Defendants replied on February 23, 2026. (ECF Doc. 19). The matter is now fully ripe.

## III.    Factual Background

At the time of the alleged events, Stubbs was a detainee of the State of Ohio at the CCCC. (ECF Doc. 1, Compl., ¶ 3). Stubbs is currently confined in Noble Correction Institution in Caldwell, Ohio. (*Id.*). Plaintiff purports to sue each Defendant "individually and in his/her official capacity." (ECF Doc. 1, Compl., ¶ 8).

On March 19, 2024, Stubbs alleges Harrison "smashed" him into his cell door. (*Id.* ¶ 10). Stubbs states that Defendant Harrison requested medical assistance after denying his initial request. (*Id.*). Stubbs claims that medical scheduled an x-ray that he never received. (*Id.*). Stubbs claims Defendant Harrison's actions were "in retaliation for a grievance/kite [he] wrote on him for his misconduct." (*Id.*). Stubbs subsequently filed a grievance against Defendant Harrison on

2

March 21, 2024. (ECF Doc. 18-1, p. 2). Defendant Harrison denies all allegations. (ECF Doc. 13, Ans., ¶ 10).

On March 28, 2024, Stubbs alleges Defendant Krotzer "smashed" him into his cell door. (ECF Doc. 1, Compl., ¶ 11). Stubbs previously filed a grievance against Defendant Krotzer for provoking other inmates eight days before the incident. (ECF Doc. 18-1, p. 6). Stubbs states that he hit his head and became dizzy. (ECF Doc. 1, Compl., ¶ 11). Stubbs states that Defendant Krotzer denied his request for medical treatment. (*Id.*). Stubbs then asked Corporal Chapman for medical assistance. (*Id.*). Medical assistance arrived and Stubbs states they scheduled another x-ray for April 11, 2024. (*Id.*). Stubbs claims that the appointment was "erased out of the system." (*Id.*). Stubbs claims Defendant Harrison's actions were in retaliation of the grievances filed due to his misconduct. (*Id.* ¶ 15). Defendant Krotzer denies all allegations. (ECF Doc. 13, Ans., ¶ 11).

On July 3, 2024, Stubbs alleges Defendant Jordan "smash[ed]" him into his cell door twice. (ECF Doc. 1, Compl., ¶ 12). Stubbs claims Defendant Jordan denied him medical attention. (*Id.*). Stubbs stated that he wrote a grievance upon which Corporal Bailey sent Stubbs medical assistance. (*Id.*). Stubbs states that medical scheduled an x-ray for July 15, 2024. (*Id.*). Stubbs claims he "was in severe pain and couldn't sleep on [his] left side." (*Id.*). Stubbs subsequently filed a grievance against Defendant Jordan for the incident.[1] (ECF Doc. 18-1, p. 1). Defendant Jordan denies all allegations. (ECF Doc. 13, Ans., ¶ 12).

Stubbs states that he has been "irreparably injured" by the conduct of the Defendants and will continue to face harm unless the Court grants declaratory and "preliminary and permanent"

---

[1] Stubbs filed the grievance on July 2, 2024 but describes the same incident he states occurred on July 3, 2024 in his Complaint. (ECF Doc. 18-1, p. 1).

injective relief.[2] (ECF Doc. 1, Compl., ¶¶ 16-18). Stubbs seeks compensatory damages of $100,000.00; punitive damages of $50,000.00; and nominal damages of $75,000.00 against each Defendant. (*Id.* ¶¶ 19-20). Stubbs also seeks recovery of the cost in his lawsuit. (*Id.* ¶ 22).

## IV.     Standard of Review

Once the pleadings stage is complete, but early enough not to delay trial, a party may seek judgment on the pleadings. Fed. R. Civ. P. 12(c); *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021). The standard for considering a Rule 12(c) motion for judgment on the pleadings is the same as that of a Rule 12(b)(6) motion to dismiss. *Id.* at 659.

When deciding a Rule 12(c) motion, a court considers all available pleadings, including the complaint and the answer. *See* Fed. R. Civ. P. 12(c). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are *referred* to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Couns. at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted) (emphasis added). The matters a court may consider are limited to the pleadings phase and do not extend into discovery. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) (describing conversion to summary judgment if the court considers matters outside the pleadings).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be

---

[2] Stubbs is currently confined in Noble Correction Institution in Caldwell, Ohio. (ECF Doc. 1, Compl., ¶ 3). Stubbs will not face continuous harm unless it is carried out by non-parties to this case at Noble Correction Institution.

4

granted only if the moving party is nevertheless clearly entitled to judgment." *Moderwell*, 997 F.3d at 659 (internal quotations and marks omitted). To succeed, the moving party must show that, even if accepted as true, "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* On the other hand, to survive a motion for judgment on the pleadings, as with the Rule 12(b)(6) standard, a complaint must plead facts sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings by pro se litigants are liberally construed and held to less stringent standards than formal pleadings by lawyers. *El Bey v. Roop*, 500 F.3d 407, 413 (6th Cir. 2008); *see also Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985). But even so, liberal construction of pro se pleadings is not without its limits. *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). Liberal construction does not require this Court to conjure allegations on a plaintiff's behalf, and pro se pleadings must provide notice to the opposing party of the relief sought. *Id.*

At this stage in the pleadings, a material issue of fact exists when the allegations set out more than a speculative possibility that the opposing party is entitled to the relief sought. *Twombly*, 550 U.S. at 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" quoting *id*. at 678). Thus, the complaint should indicate a "statement of the circumstances, occurrences, and events giving rise to the claim." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001), citing *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995); Fed. R. Civ. P. 8. Nonetheless, courts need not accept a legal conclusion as true when dressed as a factual allegation or make unwarranted factual inferences. *Jackson v. Prof'l Radiology, Inc.*, 864 F.3d 463, 466 (6th Cir. 2017); *see also Twombly*, 550 U.S. at 555-56.

In application, this is not a high bar for the opposing party to cross; it means simply that they present "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556. If so, then the case may proceed even if uncovering actual proof of the facts alleged is improbable and recovery unlikely. *Id.*

## V.    Discussion

Defendants jointly request that this Court grant their Motion for Judgment on the Pleadings and dismiss Stubbs' case in its entirety, with prejudice. (ECF Doc. 15). They bring multiple arguments in support. (*See id.*). Despite the Complaint (ECF Doc. 1) and fully briefed opposition to Defendants' motion (ECF Doc. 18), Stubbs has not alleged sufficient facts for his case to succeed.

I now consider each of Defendants' arguments in turn.

### A.    Stubbs fails to state a claim of deliberate indifference to his medical needs.

The Defendants argue that Stubbs fails to state a claim for deliberate indifference under 42 U.S.C. § 1983. (ECF Doc. 15, p. 6). "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). There is no dispute the individual defendants were acting under color of state law.

The Due Process Clause of the Fourteenth Amendment forbids jail officials from acting with deliberate indifference toward a pretrial detainee's serious medical needs. *Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 605 (6th Cir. 2022) (citation omitted); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005) ("The right to adequate medical care is guaranteed to

convicted federal prisoners by the Cruel and Unusual Punishment Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment.").

A plaintiff alleging deliberate indifference to medical needs must show "(1) that [the plaintiff] had a sufficiently serious medical need and (2) that each defendant acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023). Stubbs fails to allege facts sufficient to state a claim for deliberate indifference under both elements.

### 1. Stubbs has not pled that he had an objectively serious medical need.

For the first element, Stubbs alleges dizziness following Defendant Krotzer's violent act on March 28, 2024, and severe pain that prevented him from sleeping on his left side following Defendant Jordan's violent act on July 3, 2024. (ECF Doc. 1, Compl., ¶¶ 11-12). Stubbs received medical treatment but argues that he "would not be in need of an x-ray if he was not severely injured from the incidents, and needed the x-ray to properly see what was wrong." (ECF Doc. 18, ¶ A).

Defendants argue that Stubbs has not pled facts sufficient to state a claim for deliberate indifference to his serious medical needs because he has not pled that he had an objectively serious medical need. (ECF Doc. 15, p. 6). Defendants state that "[a]t most" Stubbs claims he was dizzy after the incident with Defendant Krotzer and did not receive an x-ray that was scheduled after at least two of the incidents. (*Id.* at p. 7).

The first element of a deliberate indifference claim – also known as the objective prong – requires an objectively serious medical need. *Cole v. Ashtabula Cnty.*, No. 1:23-CV-01093, 2025

7

WL 3562581, at *7 (N.D. Ohio Dec. 12, 2025). Courts distinguish between minor illnesses that require treatment for "convenience or comfort" such as colds and headaches and "serious medical needs which may be life threatening or pose a risk of needless pain or lingering disability if not treated at once." *North v. Cnty. of Cuyahoga*, No. 1:15-CV-01124-DAP, 2017 WL 3479579, at *9-10 (N.D. Ohio Aug. 14, 2017). A serious medical need is one that has been diagnosed by a physician as mandating treatment or is so obvious even a lay person would easily recognize the necessity for medical attention. *Green v. Crawford Cnty., Mich.*, 22 F.4th 593, 607 (6th Cir. 2022).

Obvious external signs of internal distress – such as complaining, vomiting, shaking and twitching, or "the classic signs of an impending heart attack" – can indicate to a layperson that a detainee has a serious medical need. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) (finding an obvious medical need for appendicitis when the detainee complained and vomited); *see also Grote v. Kenton Cnty., Kentucky*, 85 F.4th 397, 408 (6th Cir. 2023) (finding an obvious medical need when the detainee "was shaking and twitching," and "lacked basic motor control"); *Est. of Carter v. City of Detroit*, 408 F.3d 305, 307 (6th Cir. 2005) (finding an obvious medical need when the detainee was "experiencing chest pains and shortness of breath, some of the classic symptoms of a heart attack"). If a medical need is non-obvious, it must generally have been "diagnosed by a physician as mandating treatment" and proven by "verifying medical evidence." *Blackmore*, 390 F.3d at 897-98.

Stubbs fails to allege injuries in the first incident that were obvious or mandating treatment as diagnosed by a medical professional. After the first incident with Defendant Harrison, Stubbs does not describe any symptoms – let alone obvious symptoms. (ECF Doc. 1, Compl., ¶ 10). Following his medical examination, Stubbs fails to plead facts that the medical

8

professionals diagnosed Stubbs with any injury. (*Id.*). Stubbs states he did not receive an x-ray but fails to allege any medical consequences. (*Id.*). Thus, Stubbs did not suffer an injury giving rise to an objective medical need following the first incident.

Stubbs' alleged injuries in the second and third incident are likewise non-obvious and lack a diagnosis from a medical professional. After the second incident with Defendant Krotzer, Stubbs alleges that he hit his head and became dizzy. (*Id.* ¶ 11). After the third incident with Defendant Jordan, Stubbs alleges he "was in severe pain and couldn't sleep on [his] left side." (*Id.* ¶ 12). On both occasions, Stubbs was provided medical attention but fails to describe or provide medical notes, findings, or diagnoses that show a medical need. (*Id.* ¶¶ 12-13). If Stubbs' dizziness, pain, and inability to sleep was so non-obvious that a medical professional failed to find any medical need, then a lay person certainly could not have recognized the necessity for a doctor's attention. *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (rejecting the "obvious existence of a sufficiently serious medical need" when that need was not obvious to trained medical personnel). Nonetheless, dizziness and inability to sleep on one's left side do not amount obvious symptoms like vomiting, shaking, and twitching. *Grote*, 85 F.4th at 408; *see also North*, 2017 WL 3479579, at *9-10 (holding that a plaintiff complaining his "arm hurt" constituted a "minor" medical need).

Thus, Stubbs fails to establish the objective prong for any of the Defendants. But even if Stubbs could establish the objective prong for his deliberate indifference claim, he has failed to establish the subjective prong as to any individual defendant.

**2.      Stubbs has not pled that any Defendant knew of an excessive risk to his health or safety and recklessly disregarded it.**

For the second element, Stubbs writes that he "complained about the wanton manner some of the defendants acted in." (ECF Doc. 18, ¶ B). Stubbs argues that "[d]enying a detainee medical needs knowing the acts that were committed against the plaintiff is a matter of deliberate indifference." (*Id.*).

Defendants argue Stubbs has not pled facts showing that each Defendant knew of and disregarded an excessive risk to his health or safety. (ECF Doc. 15, p. 8). Defendants highlight that "in each instance described by [Stubbs] in his Complaint, he was seen by jail medical staff." (*Id.*).

The second element of a deliberate indifference claim – also known as the subjective prong – requires that the Defendants recklessly disregarded a risk so obvious that they either knew or should have known of it. *Helphenstine*, 60 F.4th at 317. Under this view, Stubbs does not need to establish that Defendants subjectively knew of any substantial risk of serious harm. *See id.*

The subjective prong requires more than mere negligence. *Hehrer v. Cnty. of Clinton, Michigan*, 161 F.4th 955, 964 (6th Cir. 2025). For recklessness, the risk must be "substantially greater than that which is necessary to make a defendant's conduct negligent." *Id.* (internal citation omitted). In other words, it must be "highly probable" that the risk would materialize and cause harm. *Id.* In addition, Stubbs must show that the Defendants "responded unreasonably" to the risk. *Campbell v. Riahi*, 109 F.4th 854, 860 (6th Cir. 2024). Correction officers "typically act reasonably by referring an inmate's health concerns to medical personnel." *Hehrer*, 161 F.4th at 964. "A contrary rule would adopt the (potentially dangerous) proposition that lay staff have a duty to veto medical decisions from trained professionals." *Id.*, citing *McGaw v. Sevier County*,

10

715 F. App'x 495, 497–99 (6th Cir. 2017). This is not to say that lay staff's deference on a medical determination is impenetrable. A corrections officer may act recklessly after deferring to medical judgments when (a) the officer does not seek medical help after an inmate suffers from "new and alarming symptoms" since last seeing a medical professional; (b) the officer defers to an unethical healthcare worker that the officer knows mistreats inmates; or (c) the officer fails to implement a medical professional's own instructions. *Id.* (collecting cases).

Here, Stubbs sues three named officers: Harrison, Krotzer, and Jordan. Stubbs may not impose liability on these defendants for their coworkers' acts, and therefore he must satisfy the subjective prong of the deliberate-indifference test for each defendant. *Cole v. Ashtabula Cnty.*, No. 1:23-CV-01093, 2025 WL 3562581, at *10 (N.D. Ohio Dec. 12, 2025).

### i.    Defendant Harrison

Stubbs admits that Defendant Harrison requested medical assistance after denying his initial request 20 minutes after the incident. (ECF Doc. 1, Compl., ¶ 10). Stubbs claims that medical took an hour to arrive. (*Id.*). The medical team checked his vitals and scheduled an x-ray that he never received. (*Id.*).

Stubbs fails to present evidence that Defendant Harrison recklessly disregarded Stubbs' injuries. It is undisputed that Defendant Harrison called the medical team after 20 minutes. Even if waiting 20 minutes were negligent, a deliberate indifference claim demands more than mere negligence. *Hehrer*, 161 F.4th at 964. The medical team arrived, and Defendant Harrison deferred to their expertise. Whether or not Stubbs medical need required an x-ray was not within Defendant Harrison's decision or control. *Id.* Further, Stubbs fails to allege facts that show he developed "new and alarming symptoms" since last seeing a medical professional that Defendant Harrison failed to act on; that Defendant Harrison deferred to an unethical the medical team; or

11

Defendant Harrison failed to implement a medical professional's own instructions. Thus, Stubbs fails to allege facts that show Defendant Harrison acted with deliberate indifference.

### ii.  Defendant Krotzer

Stubbs states that Defendant Krotzer denied him his request for medical treatment and Corporal Chapman called for medical assistance. (ECF Doc. 1, Compl., ¶ 11). Medical assistance arrived and Stubbs states they scheduled another x-ray for April 11, 2024. (*Id.*). Stubbs claims that the appointment was "erased out of the system." (*Id.*).

Stubbs fails to present evidence that Defendant Krotzer recklessly disregarded Stubbs' injuries. While Defendant Kotzer did not call the medical team, the medical team nonetheless arrived and found no injury. Defendant Kotzer's actions were at most negligent considering Stubbs' alleged symptoms were non-obvious. *See Hehrer*, 161 F.4th at 964 (finding that a correction officer need not seek immediate medical assistance when the detainee's condition was non-obvious). Stubbs fails to allege facts that show he developed "new and alarming symptoms" after seeing the medical team that Defendant Kotzer failed to act on; Defendant Kotzer deferred to an unethical the medical team; or Defendant Kotzer failed to implement a medical professional's own instructions. Thus, Stubbs fails to allege facts that show Defendant Kotzer acted with deliberate indifference.

### iii.  Defendant Jordan

Stubbs claims Defendant Jordan denied him medical attention. (ECF Doc. 1, Compl., ¶ 12). Stubbs stated that he wrote a grievance upon which Corporal Bailey sent Stubbs medical assistance. (*Id.*).

Stubbs fails to present evidence that Defendant Jordan recklessly disregarded Stubbs' injuries. While Defendant Jordan did not call the medical team, the medical team nonetheless

12

arrived and found no injury. Defendant Jordan's actions were at most negligent considering Stubbs' alleged symptoms were non-obvious. *See Hehrer*, 161 F.4th at 964. The Complaint lacks any facts indicating that it was "highly probable" that a medical risk would materialize and cause harm to Stubbs. *Id.* Stubbs fails to allege facts that show he developed "new and alarming symptoms" after seeing the medical team that Defendant Jordan failed to act on; Defendant Jordan deferred to an unethical the medical team; or Defendant Jordan failed to implement a medical professional's own instructions. Thus, Stubbs fails to allege facts that show Defendant Jordan acted with deliberate indifference.

**B.      Stubbs fails to state a claim of retaliation for filing grievances.**

Stubbs alleges that each of the Defendants retaliated against him for grievances he filed against them before each violent act. Stubbs argues that he was injured and not adequately examined by medical staff – presumably by the lack of x-rays – because of the grievances he filed against the Defendants. (ECF Doc. 1, Compl., ¶ 10; ECF Doc. 18, ¶ H). Stubbs also states that "[b]y Plaintiff exercising his first amendment right of the United States Constitution, he has been retaliated upon by both Krotzer and Harrison, for grievances filed due to their misconduct." (ECF Doc. 1, Compl., ¶ 15). Stubbs attached his grievances to his motion and added facts including the pain relief medication he received. (ECF Doc. 18-1, pp. 1-6). Defendants argue that the Court should not consider the grievances or additional facts because they are "outside" the Complaint. (ECF Doc. 19, pp. 1-2). While this Court cannot consider additional facts, *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020), "[d]ocuments attached to a Rule 12 motion are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Eastman v. Cincinnati Musicians Ass'n, Loc. No. 1*, 151 F. App'x 414, 416 (6th Cir. 2005) (cleaned up) (considering a CBA that was not attached to an

13

amended complaint but repeatedly referenced). The grievances Stubbs attaches to his opposition brief were referenced in his Complaint and central to his claim for retaliation. (ECF Doc. 1, ¶¶ 10, 15). Thus, the Court will consider the grievances, but not the additional facts Stubbs adds in his brief in opposition.

Defendants also argue that Stubbs' decision to file grievances against Defendant Harrison and Defendant Krotzer did not result in retaliation because (1) Stubbs received medical attention and (2) Stubbs fails to provide any factual allegations to suggest any of the Defendants were responsible for him not receiving an x-ray. (ECF Doc. 15, p. 10). Defendants also note that Stubbs failed to describe the content and nature of the grievances in the Complaint. (*Id.* at p. 12).

Stubbs admits he did not file any grievance against Defendant Jordan. (ECF Doc. 18, ¶ I). Thus, the court will only analyze the actions of Defendant Harrison and Defendant Krotzer.

A properly pled prima facie case of First Amendment retaliation must allege:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (internal citation omitted). The court will consider the elements in turn.

### 1. Stubbs engaged in a protected activity and Defendants took adverse action.

The Court assumes, without deciding, that Stubbs can establish the first two elements. First, inmates like Stubbs have an "undisputed" First Amendment right to file grievances against prison officials. *Id.* Second, Stubbs' grievances allegedly resulted in Defendants smashing him into the cell door – conduct that undoubtedly deters a detainee from exercising the grievance

14

procedure. *Id.* (explaining that even "inconsequential" deprivation of privileges, such as confinement, can deter action).

Defendants rely on *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) and argue that the right to file grievances is a protected right only if the grievances are not frivolous. (ECF Doc. 18, p. 11). Not only do Defendants fail to define what qualifies as a "frivolous" complaint, but Defendants entirely misread *Herron*. The protected conduct at issue in *Herron* was not just an internal prison grievance, but a "legal complaint" that may have been preceded by a grievance. *Herron*, 203 F.3d at 413, 415. The issue presented to the court was whether that complaint, which had been dismissed by a district court as frivolous, was protected by the First Amendment. *Id.* at 415. As the Court recognized, prisoners generally have a constitutionally protected right to access the courts, yet it reasoned that "[d]epriving" inmates of "frivolous" claims deprives them "of nothing at all, except perhaps the punishment of [Rule 11] sanctions." *Id.* (internal citation omitted). Just two years after its decision in *Herron*, the Court noted that "*Herron*'s ruling is limited to retaliation claims involving suits dismissed as frivolous." *Bell v. Johnson*, 308 F.3d 594, 607 n.5 (6th Cir. 2002). *Herron* said nothing about situations where prison officials retaliate against prisoners for filing internal grievances on issues that were never litigated. *Id.*

It is true that the Sixth Circuit in *Maben* recited *Herron*'s statement that the "right to file grievances is protected only insofar as the grievances are not 'frivolous'" when determining whether an internal grievance, unaccompanied by a lawsuit, was a protected activity. 887 F.3d at 264. But even there the court found that the inmate's grievance was protected conduct without assessing whether the prisoner alleged a violation of state or federal law. *Id.* at 264-65. In *Maben*, an inmate alleged that prison officials retaliated against him for complaining to a group of cafeteria workers that he received half of his serving at lunch. *Id.* at 264. The court

15

doubted whether there was a frivolousness or "de minimis exception to prisoner grievances," and suggested that the inmate's grievance was protected by the First Amendment because he sought "redress" related to "prison conditions." *Id.* at 264-65. But even if there were a "de minimis" exception, the court held that the inmate's complaint about his serving size was important enough to warrant First Amendment protections. *Id.* The court came to its conclusion without analyzing whether the inmate's inadequate serving implicated the Eighth Amendment or any other law – it simply reasoned that the grievance was legitimate because it concerned a "major requirement of life." *Id.*

As in *Maben*, Stubbs' grievances are protected by the First Amendment regardless of whether they stated a nonfrivolous underlying claim for relief. It is unclear after *Maben* whether inmate grievances lose their First Amendment protection even when raising "de minimis" issues. *See* 887 F.3d at 264-65. But even if they do, allegations of prison officials smashing inmates into cell doors is not a "de minimis" issue. Accordingly, Stubbs' grievances are protected under the First Amendment.

### 2. Stubbs fails to create a causal connection between the grievances and the prison officials physically harming him.

For the third element, Stubbs falls short. To establish causation, a plaintiff must allege the adverse action was "motivated at least in part" by the protected conduct. *Id.* "[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010). Circumstantial evidence can suffice at this stage, including allegations of "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Id.*

16

The Sixth Circuit has held that proof of temporal proximity between protected activity and an adverse action, "coupled with other indicia of retaliatory conduct," can give rise to a finding of a causal connection. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). Courts have typically found the causal connection element satisfied only where the adverse action "occurred within a matter of months, or less, of the protected activity." *Id*. at 334. But "temporal proximity, at least beyond six months, *absent some further indicia of retaliation*, cannot be used to infer causation." *Ehrlich v. Kovack*, 135 F. Supp. 3d 638, 668 (N.D. Ohio 2015) (emphasis added). A plaintiff must point to "other evidence of retaliatory conduct." *Id*. And "[o]ne example of such sufficient, additional evidence is evidence of disparate treatment." *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x. 524, 533 (6th Cir. 2011).

Defendants argue that Stubbs' claims against Defendant Harrison and Defendant Krotzer are similar to *DiBiase v. Lake Cnty. Det. Facility*, No. 1:12 CV 0944, 2012 WL 3061448 (N.D. Ohio July 26, 2012). In the case, the plaintiff-detainee alleged that the assault by the defendants in the case "result[ed] from retaliation from the grievance process." *Id.* at *16. It was unclear whether the defendants' use of alleged excessive force was motivated by the plaintiff's protected conduct. *Id.* at *17. The court dismissed the retaliation claim because the plaintiff-detainee failed to explain "the nature, content, or timing of any such grievances." *Id.* With *Dibiase* in mind, the Court will evaluate the actions of Defendant Harrison and Defendant Krotzer separately.

### i. Defendant Harrison

Stubbs fails to state a claim against Defendant Harrison. Stubbs's claim against Defendant Harrison is similar to *Diabase*. Defendant Harrison allegedly smashed Stubbs against the cell door on March 19, 2024. (ECF Doc. 1, Compl., p. 3). The only grievance Stubbs

17

provides was filed against Defendant Harrison on March 21, 2024. (ECF Doc. 18-1, p. 2). A grievance filed two days *after* the allegedly retaliatory act cannot result in retaliation. Stubbs' retaliation claim against Defendant Harrison does include a timing element, claiming Defendant Harrison retaliated against him "for grievances filed due to [his] misconduct," (ECF Doc. 1, ¶ 15), but such a statement is not enough. *Dibiase*, 2012 WL 3061448, \*19 ("While Plaintiff alleges generally that 'this assault results from retaliation from the grievance process,' he does not plead any facts to support his allegations against defendants Smith and Reed."). Stubbs fails to provide a narrative in the Complaint to connect the grievance with Defendant Harrison's conduct. Stubbs' statement is, at best, a conclusory statement without substantive facts to support it. *Hill*, 630 F.3d at 475 (holding that "conclusory allegations of retaliatory motive" are insufficient to state a claim). Thus, even under the less stringent pleading standards afforded to pro se litigants, the Court dismisses the retaliation claim against Defendant Harrison for failure to state a claim.

### ii.      Defendant Krotzer

Stubbs fails to state a claim against Defendant Krotzer. Stubbs' claim against Defendant Krotzer, however, is distinguishable from *Diabase*. Unlike *Diabase*, Stubbs attaches a grievance against Defendant Krotzer dated March 19, 2024, eight days before he allegedly smashed Stubbs into the cell door. (ECF Doc. 18-1, p. 6). But this temporal proximity is not enough on its own to infer plausibility. *Ehrlich*, 135 F. Supp. 3d at 668. When describing the incident with Defendant Krotzer, Stubbs fails to mention that he previously filed a grievance. (*See* ECF Doc. 1, ¶ 11). Stubbs does claim that Defendant Harrison retaliated against him "for grievances filed due to [his] misconduct," (ECF Doc. 1, ¶ 15), but the Complaint does not describe "other indicia of retaliatory conduct." *Dixon*, 481 F.3d at 333. "[C]onclusory allegations of retaliatory motive" are

insufficient to state a claim. *Hill*, 630 F.3d at 475. Thus, even under the less stringent pleading standards afforded to pro se litigants, the Court dismisses the retaliation claims against Defendant Krotzer for failure to state a claim.

### C. Stubbs does not provide sufficient detail to support his unsafe conditions claim.

In the Complaint, Stubbs argues that "unsafe conditions violate [his] rights." (ECF Doc. 1, Compl. ¶ 14). In his memorandum in opposition, Stubbs argues that the unsafe conditions are shown in the grievances he attached. (ECF Doc. 18, ¶ J). The grievances reiterate the three incidents that Defendants smashed Stubbs against the cell door and provide details of an apathetic attitude from the CCCC. (ECF Doc. 18-1, pp. 1-6). However, Stubbs does not specify which conditions underlie his claim.

Defendants argue that Stubbs fails to state a claim for unsafe conditions under 42 U.S.C. § 1983. Defendants state that Stubbs "fails to set forth any facts supporting a claim for unsafe conditions of confinement as a pretrial detainee." (ECF Doc. 15, p. 13). Defendants argue that since Stubbs received medical attention, there is no unsafe medical condition. (*Id.* at p. 14).

As a pretrial detainee, Stubbs' constitutional protections against unsafe conditions originate from the Due Process Clause of the Fourteenth Amendment, which protects detainees from being "punished prior to an adjudication of guilt." *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In similar fashion to a medical indifference claim, an unsafe condition claim requires a plaintiff demonstrate (1) that "he was held under conditions which posed an objectively and sufficiently serious threat to his health and safety" and (2) that "each defendant 'acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Goins v. Cuyahoga Cnty. Corr. Ctr.*, No. 1:23 CV 2343, 2024 WL 1076518, at *2 (N.D. Ohio Mar. 12, 2024), quoting

19

*Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023) (internal citation omitted).

To satisfy the objective component, a pretrial detainee must demonstrate that he suffered a "sufficiently serious" condition or deprivation in the prison context. *Helphenstine*, 60 F.4th at 317. Only allegations of "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" are sufficient to state a claim. *Hudson v. McMillan*, 503 U.S. 1, 8-9 (citations omitted). To satisfy the subjective component, a pretrial detainee must show that a defendant "not only acted deliberately . . . but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Goins*, 2024 WL 1076518, at *3, quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021).

Here, Stubbs claims facts that show an unsafe condition – that is, the three incidents where Defendants smashed Stubbs against his cell door – but fails to allege his claim against the proper defendant. There is little doubt that slamming an inmate against a cell door is an "extreme deprivation" that denies a prisoner civilized necessities. *Cf. Schoonover v. Rogers*, No. 21-3970, 2022 WL 12258998, at *6 (6th Cir. Oct. 21, 2022) (explaining that repeated violent attacks in prison can lead to a constitutional violation). Defendants argue that since Stubbs received medical attention, there is no unsafe condition. (ECF Doc. 15, at p. 14). But Defendants ignore the cause of the required medical attention. Officers who repeatedly commit violent acts against a prisoner cannot escape liability simply by calling for medical attention afterward. To hold otherwise would allow prisons to ignore unsafe conditions and shield themselves from accountability by routinely calling medical care after every violent act. A prison that condones frequent violent actions between inmates and officers likely rises to the level of an unsafe condition. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)

20

(explaining that an institution or municipality can be held liable under § 1983 when official policies or customs cause constitutional violations).

Stubbs, however, does not state a claim against a municipality or county. Stubbs sues three named officers: Harrison, Krotzer, and Jordan, and the warden. Stubbs may not impose liability on these defendants for their coworkers' acts. *Cole*, 2025 WL 3562581, at *10. One violent act by an officer does not create an unsafe condition or else all alleged torts would automatically create an unsafe condition claim. Thus, the Court dismisses without prejudice the unsafe condition claims against the Defendants for failure to state a claim. This leaves Stubbs with ample time to refile his claim if he wishes before his statute of limitations runs this upcoming July. *See Beaver St. Invs., LLC v. Summit Cnty., Ohio*, 65 F.4th 822, 826 (6th Cir. 2023) ("In Ohio, a two-year statute of limitations applies to § 1983 claims."); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (explaining that the statute of limitations for § 1983 claims begins to run when a "plaintiff has a complete and present cause of action").

**D.  Stubbs fails to state a claim against Warden Henry.**

Stubbs names Warden Henry as a defendant but does not allege any facts that implicate her. (ECF Doc. 1, Compl., ¶ 4). Defendant Henry's only relationship with the three instances is her position as warden of the CCCC. (*Id.*).

The Defendants argue that Stubbs fails to state a claim against Warden Henry under 42 U.S.C. § 1983 because liability cannot be premised solely on a theory of *respondeat superior*. (ECF Doc. 15, p. 14).

A supervisor incurs personal liability under Section 1983 only when the facts illustrate personal involvement. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) ("Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal

21

involvement is required for a supervisor to incur personal liability."). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (internal citation omitted).

As set forth above, Stubbs has not alleged any facts suggesting Warden Henry authorized, approved, or knowingly acquiesced in any of the alleged constitutional violations that form the basis of the Complaint. Accordingly, Stubbs' individual capacity claims against Warden Henry are dismissed without prejudice.

## VI.    Conclusion

Having reviewed Stubbs' Complaint, I conclude that he has failed to plead sufficient facts to support his claims. I therefore grant Defendants' motion for judgment on the pleadings (ECF Doc. 15), dismissing Stubbs' claims for deliberate indifference and retaliation with prejudice, and dismissing Stubbs' claim for unsafe conditions against Defendants without prejudice to refile for failure to state a claim on which relief can be granted.

So Ordered.

Dated: April 9, 2026

_____
REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

22